OPINION OF THE COURT
Joseph J. Maltese, J.
The plaintiff condominium and its board of managers sued *588 Louise Albert, the defendant tenant, for the common charges which Joseph Stummer, the condominium unit owner, failed to pay. The owner filed for chapter 7 bankruptcy protection on June 10, 1992 and was discharged from his debts by an order of the United States Bankruptcy Court on December 3, 1992.
The plaintiffs requested that the defendant pay her rent to the condominium instead of Mr. Stummer, by a letter dated June 23,1992. The plaintiffs claim that the defendant benefited from the use of the common areas and is therefore obligated to pay the common charges. The defendant claims that only the owner of the unit is liable.
FACTS
The defendant entered into a one-year lease agreement with Joseph Stummer effective August 15, 1991 to rent 131A Devon Loop, Staten Island, New York, which is a unit in Foxwood Square Condominium I. The condominium unit is owned by Mr. Stummer and his wife, Rose Stummer. Under the lease the tenant was obligated to pay a monthly rent of $750. The lease also provided that at the end of the term the tenant could stay until the "condo apartment * * * is sold.” In the lease, the defendant agreed to "comply with the By-laws of Foxwood Square Condominium I and the By-laws of Elmwood Park Homeowners Association, Inc. Both by-laws are a part of the lease and failure to comply with either by-laws shall constitute a default under the lease” and that the board of managers could fine her up to $500 for each violation. Additionally, the lease provided that the tenant was given a copy of both sets of bylaws.
The defendant paid her monthly rent of $750 from August of 1991 through May of 1992. The defendant then states that she stopped paying rent around June of 1992, when her landlord, Mr. Stummer, returned her June rent payment and told her that she no longer had to pay any rent because he was going into bankruptcy. Mr. Stummer in May of 1992 wrote a check out to the defendant in the amount of $750 in order to return her security deposit, but that check was returned for insufficient funds. The defendant states that she has not spoken, met, or had any contact with Mr. Stummer since 1992.
About one year later, the plaintiffs’ attorney requested that the defendant pay her rent to the condominium board instead of her landlord because Mr. Stummer had failed to pay his *589 common charges.[1] The letter, which is incorrectly dated June 23, 1992 (it should have been 1993) states that: "Since the maintenance payments, common charges or other fees due from the owner have not been paid in full, please be advised that pursuant to section 352-e (2-d) (a) of the New York State General Business Law, commencing immediately, and until such time as said payments are made current, all rental payments DUE ARE TO BE MADE PAYABLE TO FOXWOOD SQUARE CONDOMINIUM l”.
Additionally, the defendant was advised that she had the right to dispute the condominium’s demand for the rental payments at the next board meeting which was to be on July 20, 1993 at 7:30 p.m. A follow-up letter was sent certified mail on September 23, 1993.
However, the defendant states that she was told by a representative of the managing agent for the condominium that the owner’s failure to pay common charges would not result in her becoming responsible for the accrued charges. She also states that after her initial conversation with the plaintiffs’ attorney, no further request for payment was made until she received the summons and complaint in this action in November of 1994. The summons which was served on the defendant on November 7, 1994 sought $9,741.67 in accrued maintenance charges. In the summons the attorney for the condominium stated that "the cost and reasonable value to the condominium of the package of goods, labor, benefits and services is $225.67 per month, plus late fee/administration charge of $20 per month, making a total of $245.67 per month.”
The defendant during her deposition testified that she receives gas, heat, and hot and cold water without having to pay for them. Additionally, she has had her sidewalk shoveled when it snows and the lawn cut to the sides of the unit. The defendant does pay her own electric bill.
DISCUSSION
To recover for the common charges the plaintiffs state that the defendant has been unjustly enriched by this arrangement and they should therefore be entitled to over $9,000 in accrued common charges in "quasi contract.” As support for their argument the plaintiffs cite the decision of Sea Gate Assn. v Fleischer (211 NYS2d 767 [Sup Ct, Kings County I960]).
*590 1. Unjust Enrichment
In Sea Gate (supra), the defendant owned a home within the Sea Gate community in Brooklyn and refused to pay the maintenance fees assessed on her home by the membership corporation which maintained, regulated, and controlled the gates, streets, beaches, and other facilities in the community. The defendant in Sea Gate believed that since she was not a member of the corporation she did not have to pay the maintenance charges assessed against her home. The court disagreed and held that the defendant by purchasing a home in this private community, implicitly accepted an offer from the corporation to provide services for which she would be liable for her proportionate share. The court in Sea Gate held that "[m]embership in the corporation is not that which gives the right to the property owners to enjoy the easements and services provided by the Association. It is the ownership of property which effects that result. When these defendants bought their property they knew of all the existing conditions imposed upon ownership in the area” (at 779).
Moreover, in Lake Lucille Prop. Owners Assoc. v Winters (NYLJ, Aug. 2, 1995, at 26, col 6 [Clarkstown Just Ct 1995]), the court held that an owner who was aware of the private nature of the roadways, and who paid back assessments when he purchased his home was liable in "quasi-contract” even though the defendant considered himself a nonmember of the homeowner’s association. It is also interesting to note that the court in Lake Lucille pointed out that the association’s bylaws distinguished between "active members”, who were all homeowners and therefore obligated to pay from "social members”, who were tenants in a property owned by an active member, and "are not obligated to pay” (at 27, col 1) the common charges. In the case at bar there is no such distinction in the bylaws.
2. General Business Law § 352-e (2-d)
General Business Law § 352-e (2-d) (c) provides that: "If maintenance payments, common charges or other fees due from the non-occupying owner have not been paid in full, the * * * condominium board of managers shall provide written notice within forty-five days after the earliest due date to the non-purchasing tenant and the non-occupying owner providing that, commencing immediately and until such time as payments are made current, all rental payments due are to be made payable to the * * * condominium association.”
*591 The paying of the rent to the condominium association will act to "relieve that non-purchasing tenant from the obligation to pay that rent to the non-occupying owner” (General Business Law § 352-e [2-d] [e]).
A "Non-occupying owner” is an "owner of a unit in a condominium who does not reside in the unit, when the unit is occupied by a non-purchasing tenant” (General Business Law § 352-e [2-d] [a]). The definition of "Non-purchasing tenant” is "[a] person who has not purchased under the plan and who is a tenant entitled to possession at the time the plan is declared effective or a person to whom a dwelling unit is rented subsequent to the effective date” (General Business Law § 352-eee [1] [e] [emphasis added]).
Additionally, subdivision (2-d) (b) of General Business Law § 352-e prohibits the Attorney-General from accepting any new offering plan or an amendment to existing plan unless the plan or amendment provides that when nonoccupying owner does not "make all payments due * * * including but not limited to maintenance payments, common charges, assessments or late fees, within thirty days after they are due” then upon notice in accordance with subdivision (2-d) (c) of General Business Law § 352-e, all rental payments from the nonpurchasing tenant shall go directly to the condominium. Thereafter, once the maintenance payments are current, the board must give the tenant notice of that fact within three days of the payments becoming current (General Business Law § 352-e [2-d] [c]).
However, subdivision (2-d) (d) of General Business Law § 352-e also states that "[n]othing in this subdivision shall limit any rights existing under any other law.” Therefore, it is clear that this section of the law only gives the condominium board a possible cause of action, but not an exclusive one.
A. Case Law
The only reported case dealing with this section of the General Business Law is Board of Mgrs. of Seaport S. Condominium v 130 Water St. Assocs. (153 Misc 2d 873 [Sup Ct, NY County 1992]) where the condominium board alleged that the defendant, who owned the condominium unit, failed to pay monthly common charges, fuel bills, and various other charges. There the defendant leased the space in his unit to six separate commercial tenants pursuant to six separate leases. The condominium board sent to each tenant a letter notifying them of the owner’s default and demanding that the rent be paid to *592 them. The court held that General Business Law § 352-e (2-d) could not be used in this situation as they were commercial tenants and the definitions of "non-occupying owner” and "non-purchasing tenant” refers to residing or dwelling in a premise. Accordingly, the court barred the condominium from employing General Business Law § 352-e (2-d) as the premises were commercial in nature. However, the court did state that since "Associates [the condominium owner] has not paid either basic common charges or the additional charges for fuel, late fees, interest and attorneys’ fees, an order directing use and occupancy should be entered.” (Supra, at 875; see also, Mollen, Realty Law Digest: Condo/ Co-Ops — Commercial Condominiums — Applicability of General Business Law § 352-e (2-d), NYLJ, May 13, 1992, at 4, col 5.)
B. Legislative History[2]
The accompanying bill memorandum to General Business Law § 352-e (2-d) states that the legislative purpose of the amendment was to address the "failure of non-occupying owners to make maintenance payments [which] has put cooperatives and condominiums in jeopardy [and that the] [d]irect payment of rent to the apartment corporation or condominium would at least partially alleviate the financial distress of the owner-occupants where a sponsor or investor has failed to meet its financial obligations” (Bill Jacket, L 1991, ch 594, at 6).
Additionally, the statute only applies to "offering plans not yet accepted for filing, and [to] those already accepted for filing” where shares or units remain unsold (Department of Law Memorandum for the Governor regarding A 7502-A, Bill Jacket, L 1991, ch 594, at 7).
The Bill Jacket contains a letter from the Rent Stabilization Association of New York City urging the Governor to veto the bill (Bill Jacket, L 1991, ch 594, at 24-25). The letter raised some interesting questions left open by the bill, which counsel in the case before this court also raised, i.e., what happens if the tenant stops paying rent? When the tenant is paying rent to the board does the owner or the board have the obligation to commence nonpayment proceedings against the tenant? Other questions might include: If the tenant is paying the board, is *593 the board the landlord? Who makes repairs?, etc. While these questions are not before this court, they raise issues which call for solutions not anticipated by the sponsors, owners, tenants or even the Legislature.
FINDINGS
The condominium unit owner has clearly walked away from this property. There has been no contact between the owner and any of the parties in this action. It appears that the condominium owner took the benefit of bankruptcy and left his condo to be foreclosed by the bank. He also appears to have given his tenant a "gift” until she would be evicted by a court order. However, this court finds that this was not a "gift” which the landlord had a right to give. The bankrupt landlord neglected to collect the rent or to assign the rent for the benefit of his creditors which included the condominium plaintiff or foreclosing bank. This may constitute a fraud being perpetrated by John Stummer upon his creditors, including the condominium board, and the Bankruptcy Court. This court will not add to the injustice by allowing the tenant to receive benefits from the condominium without ever paying for them.
The defendant clearly received notice that she was to pay over her rent to the condominium board in June of 1993. However at that time she was not paying any rent and, therefore, she argues, had nothing to pay over to the condominium board. That she was absolved from paying rent by the bankrupt unit owner is somewhat suspect, but no rebuttal to same has been offered by the condominium.
While General Business Law § 352-e provides a possible statutory remedy, the drafters of the statute chose to make its powers prospective from its adoption on July 23, 1991. Therefore, this statute is not applicable to this action as the condominium was created before the statute was enacted.
However, the tenant must pay the common charges as a third-party beneficiary for services rendered the tenant by the condominium. In Seaport S. Condominium (supra, at 875), the court held that "given the established fact that [the tenant] has not paid either basic common charges or the additional charges for fuel, late fees, interest [or] attorneys’ fees, an order directing use and occupancy should be entered.” The defendant clearly benefits from the services provided to her by the condominium and must bear the costs involved in paying for those services. A reasonable use and occupancy is at least $245.67 per month, which is the common charge for this unit. *594 Therefore this court is ordering that the defendant pay use and occupancy from October 17, 1994 (the date the summons and complaint were filed) through April 17, 1996, which is 18 months at $245.67 per month for a total of $4,422.06.
In addition, the defendant is to pay use and occupancy prospectively at the rate of $245.67 per month or at the stated common charge until she vacates or is ordered to do otherwise by a court of competent jurisdiction.
Accordingly, judgment for plaintiffs in the sum of $4,422.06 plus cost of the suit. Use and occupancy of $245.67 per month to be next due on May 17, 1996.

. The plaintiff obtained a judgment in this court against Rose and Joseph Stummer on June 3, 1994 in the amount of $6,886.59.

. The bill (1990 NY Assembly Bill A 11435-A) was introduced in the 1990 session, and passed the Assembly. However, the Senate did not act on the bill. The bill (now 1991 NY Assembly Bill A 7502-A) passed the Assembly and the Senate (1991 NY Senate Bill S 5939) in 1991 and was signed by the Governor on July 23, 1991.