OPINION OF THE COURT
Philip S. Straniere, J.
*951 Plaintiff, Board of Directors of Millennium Homeowners Association, commenced this action against the defendant, Michael Bosco, alleging that the defendant has failed to pay homeowners association dues. Defendant has filed a motion to dismiss this action on the grounds that his unit is not part of the homeowners association and that this court has previously decided the issue of his membership in a small claims action (SCR No. 60606/03). Plaintiff has cross-moved for summary judgment. Plaintiff is represented by counsel. Defendant is representing himself.
The plaintiff had commenced the above-cited small claims action seeking a judgment against the defendant for homeowners association dues and assessments. After a trial on April 15, 2004, this court dismissed plaintiffs action on the grounds that the plaintiff had failed to prove its prima facie case that the defendant’s unit was included in the association. The decision of the court made it clear that the dismissal was without prejudice to be renewed in a new action if the plaintiff could establish that the defendant’s dwelling unit was to be included in the association. The court also pointed out that should the defendant’s unit be included in the homeowners association, it would be extremely unlikely that defendant could escape liability for those charges. The plaintiff commenced its current action in September 2004 when it purchased an index number. Defendant filed an answer alleging that the action was frivolous because of the prior small claims adjudication and submitted this motion to have the action dismissed on that ground.
Background:
On or about March 19, 1999 Michael Bosco and Wendy Bosco, husband and wife, entered into a written contract with the seller, KB Homes, Inc., to purchase the premises, 437 Winant Avenue, Staten Island, New York. The contract anticipated a closing date of September 1, 1999. Attached to the contract was a rider which provided:
“1. Purchaser(s) recognize that the premises to be purchased is part of a Homeowners Association not yet accepted for filing by the Office of The Attorney General of the State of New York.
“2. The purpose of the Homeowners Association is for maintaining the common internal storm and sanitary sewer system to be known as Millennium Loop.
“3. The development subject to the Homeowners *952 Association will consist of 54 residential dwellings. Common charges payable on a monthly basis will not exceed ($30.00) per month for the first year of operation o[f] the Homeowners Association.
“4. It is understood and agreed that no down payment will be accepted on this date. Upon acceptance for filing of the Homeowners Offering Plan, same shall be forwarded to the attorney for Purchaser(s).
“5. Purchaser(s) shall have seven (7) days in which to accept or reject the terms and conditions as outlined in the aforementioned Offering Plan.
“6. If Purchaser(s) choose to accept same, Purchasers) shall deliver a check in the amount set-forth in the Contract of Sale for the down payment to Seller’s Attorney within the time specified above . . . The Contract of Sale shall then be dated as of the date set-forth on the aforementioned check and the Contract shall be firm and binding against said Purchaser(s) and Seller.
“7. If Purchaser(s) rejects the terms and conditions as outlined in the aforementioned Offering Plan or, if Purchaser(s) fails to so notify Seller of his/her/ their decision, Seller shall not be obligated to sell the premises to Purchaser(s), whereupon no liability shall accrue as against either party.”
The rider was signed by a corporate officer of seller as well as both purchasers.
By letter dated April 22, 1999 counsel for the seller forwarded a copy of the offering plan to counsel for the purchasers. On April 27, 1999 purchasers’ attorney forwarded to seller’s counsel a check for $13,250 as the down payment required by the contract, thereby indicating that the purchasers had acquiesced to the contract terms, including those provisions in regard to the homeowners association.
On December 28, 1999 the parties closed title; however, only Michael Bosco was named as a purchaser on the deed. The deed was not recorded with the Richmond County Clerk until February 1, 2000.
On its face, it would appear that there is no legal impediment to the plaintiffs cause of action as the defendant entered into title to a home which is a member of plaintiff association.
*953 As is often the case, “Things are not always what they seem.”[1] Although it was dated January 12, 2000, the declaration of the homeowners association was not recorded with the Richmond County Clerk until April 6, 2000. This means that the homeowners association was not “of record” in the Richmond County Clerk’s Office when the defendant went into title. The declaration is not recited in defendant’s deed and would not have been disclosed as an exception to title in defendant’s title insurance report or policy. This failure to timely record the declaration on its face provides some basis for the defendant to assert his unit is not included in the homeowners association.
Legal Issues Presented:
A. Is There a Valid Homeowners Association?
1. Regulatory Requirements.
When real property is sold in New York State subject to membership in a homeowners association, it is necessary for the sponsor of the sale of that property to comply with General Business Law article 23-A. That statute authorizes the New York Attorney General to promulgate rules for the regulation of such sales (13 NYCRR 22.1 et seq.).
One of the regulations requires that any offering plan include a section labeled “Terms of sale” and contain a statement that “the declaration of covenants, restrictions, easements and liens and such other documents as required by law will be recorded or filed prior to the first conveyance of title to a home or lot in accordance with the disclosure contained in the offering plan; and state the place of recording” (13 NYCRR 22.3 [m] [5]).
In the section labeled “Rights and obligations of the sponsor,” there is the following language: “[T]he sponsor will file the declaration and will convey HOA property to the HOA in a particular phase or section prior to closing title to the first home or lot in that phase or section” (13 NYCRR 22.3 [n] [8]).
There is no question that title to defendant’s home was conveyed to the defendant prior to the recording with the County Clerk of the declaration establishing the HOA. The issue remains as to whether or not such failure to file prior to conveyance to defendant is fatal to the formation of a valid HOA. Parenthetically there is no evidence before the court as to how many of the 54 homes in the HOA were sold by the sponsor prior to filing of the declaration in April 2000 or if the declaration was somehow discoverable by a search of the County Clerk’s records prior to that date.
*954 Generally the use of the word “will” in a statute or regulation as was done in these two sections makes the sponsor’s actions mandatory. If this is the conclusion to be reached then it would seem that the sponsor was not in compliance with the Attorney General’s filing requirements when the property was conveyed to the defendant.
2. Savings Clause.
There is language in the regulations that indicates that the Attorney General recognized the need to be flexible in interpreting some of the requirements so as to effectuate the intent of the statute and not be rigid so as to cause harm to the consumer. The regulations provide:
“Waiver. In the interests of justice, the Department of Law may waive compliance with any provision of these regulations and can permit variation of regulations so long as the variation is consistent with the purpose and intent of the regulation and statute or unless prohibited from doing so by final court order” (13 NYCRR 22.1 [h]).
The regulations also provide that the Department of Law has to issue a letter to the sponsor stating the plan has been filed with it or indicating deficiencies no later than 30 days after its submission to the department (13 NYCRR 22.1 [f|). Obviously the plan was approved sometime prior to January 12, 2000, the date affixed to it, and it was ultimately recorded with the County Clerk in April 2000. The actual filing date is defined in the regulations as the date of the letter from the Department of Law notifying the sponsor that the plan has been accepted. It is also a requirement that all plans must be dated before being presented to purchasers (13 NYCRR 22.2 [d]). Had the Department of Law been troubled by the sponsor’s failure to record the declaration before conveying the units, it could have taken some action to punish the sponsor for its tardiness, be it by fine or disapproval of the plan. There is no evidence that such steps were taken by the Department of Law.
It is evident that once the filing has been approved by the Department of Law, the recording with the County Clerk’s Office is merely a ministerial act. The recording with the County Clerk “puts the world” on notice of the declaration and that the property is encumbered by the declaration. The recording does not affect the validity of the plan and the obligation of homes subject to the plan to be members of the association. The defendant as a purchaser of a unit in the homeowners association had actual *955 knowledge of the declaration and contents in April 1999 when the proposed plan was given to defendant’s counsel for review. If the plan was altered in any material manner as a result of the actions of the Department of Law, copies of those changes would have been forwarded to defendant. There is no showing that any such changes were made. Also, as defendant was represented by counsel at all times during the contract and sale procedure, defendant could have raised the issue or checked with the Department of Law if at all concerned about the implications of the declaration not being of record when title closed.
There is no harm to the defendant since the exhibits establish that in April 1999 his attorney received a copy of the proposed declaration and released the down payment money to the seller’s attorney. Defendant could have taken steps at that point to investigate as to whether or not the plan had been approved and if the sponsor was in compliance with the statute. Defendant has not shown that the plan provided to him at the time of contract varies in any material manner from the one actually recorded or that his rights have been altered in the filed document. Also, there is no showing when the declaration was submitted to the County Clerk for recording. Unfortunately it has become a fact of life in Richmond County that documents are not being recorded for in excess of six months in many cases because of the lack of resources in the County Clerk’s Office to accomplish those tasks and not because the documents are submitted in an improper format.
It is clear that the NYCRR provides that, in the interest of justice, the Department of Law could ignore the late recording. So too can a court of law. To adopt the defendant’s position would mean that not only is his unit not included in the plan, all the other units conveyed before April 2000 would likewise be excluded. Such an action would defeat the purpose of the formation of the HOA and would result in only some of the unit owners bearing all of the maintenance costs for all 54 homes hooked into the sewer lines.
Although not a condominium, the logic and public policy arguments that support the statutory scheme adopted by the Legislature in enacting the Condominium Act, article 9-B of the Real Property Law, are applicable to homeowners associations formed pursuant to the same regulations contained in the NYCRR promulgated by the Department of Law for condominiums. Real Property Law § 339-j requires all unit owners to abide *956 by the bylaws and adopted rules while Real Property Law § 339-x prohibits a unit owner from exempting himself or herself from liability for his common charges. To achieve the legislative purpose in establishing a scheme for Department of Law review of both condominiums and homeowners associations, it must be concluded that these sections of the Real Property Law also apply to homeowners associations.
The defendant is correct in that his unit was not encumbered by the declaration that formed the homeowners association on the date he went into title. However, the statutory scheme established by the Legislature and the rules and regulations of the Department of Law do not permit defendant to opt out of his obligation to pay assessments as due. This court has the authority to waive any defects in the filing. It chooses to do so. Defendant is a member of the association.
B. Would the Defendant be Unjustly Enriched?
It is uncontroverted that the premises in question is serviced by a sanitary and storm sewer system that was installed by the developer-sponsor when the units in the development were constructed. Defendant has not presented any evidence that his unit is not hooked into the sewer system described in the declaration. The construction of these amenities were required by the New York City law and a condition by the Buildings Department as part of the approval process. The plan filed with the Department of Law created the homeowners association with a specific purpose of maintaining these sewer lines. Defendant’s unit is being benefitted by the existence of these amenities. There is no question that if the defendant is permitted to avoid dues and assessment obligations, then the other 53 homeowners would have to pay that additional share. The alternative would be to deem that no homeowner has to contribute and then assess each unit owner if and when there were problems with the sewer lines. In such a case, it might be impossible to collect the money needed to do an emergency repair if the homeowners refuse to contribute. The current system allows the association to build an account with sufficient funds to meet anticipated emergencies.
Courts that have dealt with this issue have held that it is ownership of the property, not membership in the corporation, which gives the right of a unit owner to enjoy the easements and services provided by the association and conversely gives rise to an obligation on the part of the homeowner to contribute his or her fair share for the maintenance of those services (Sea
*957 Gate Assn. v Fleischer, 211 NYS2d 767 [1960]; Foxwood Sq. Condominium I v Albert, 168 Misc 2d 587 [1996]). The Court of Appeals in a decision said that:
“Where there is knowledge that a private community homeowners’ association provides facilities and services for the benefit of community residents, the purchase of property there may manifest acceptance of conditions of ownership, among them payment for the facilities and services offered. The resulting implied-in-fact contract includes the obligation to pay a proportionate share of the full cost of maintaining those facilities and services, not merely the reasonable value of those actually used by any particular resident.”[2]
Defendant herein was well aware of the existence of the common sanitary and storm sewers as that was disclosed in the contract of sale and on the Freddie Mac appraisal form completed so that the defendant could obtain a mortgage. Defendant was to be 1 of 54 homes to be serviced by these sewers; if defendant does not participate in the association and does not pay his dues, clearly defendant’s share of the cost of maintaining the system would be borne by the other homeowners. Defendant cannot seriously contend that he should only be responsible for maintaining the lines that run through his property, since if one of them needs servicing and he fails to act to complete the repairs, all of the other homeowners would be adversely affected. There is case law that holds that even if the specific charges being assessed by the association are not mentioned in the homeowner’s deed, if the services are in fact received, an implied contract exists for the full cost of maintaining those services (Nevel v Shelter Is. Hgts. Prop. Owners Corp., 204 AD2d 700 [1994]).
The fact that defendant’s home and the other 53 homes are attached to the New York City sewer system does not negate the fact that there is a private sewer line which connects to the city service and for which the 54 homeowners are responsible. Just as the owner of an unattached home is linked to the city system and is responsible for the line from the premises to the street, so too is defendant, as a member of the association, responsible for the sewer line from his unit to the city sewer. It just so happens that there are 53 other persons equally responsible and each one is required to pay his or her proportionate share in that regard.
*958 Under common-law contract theory the defendant is responsible for his proportionate share of the maintenance costs of the common elements maintained by the homeowners association.
C. Does the Defendant Have Any Redress?
As set forth above, it is clear that the defendant’s property was not encumbered by the declaration establishing the homeowners association at the time the defendant went into title in December 1999. Also as set forth above, defendant cannot escape the financial obligation placed upon him as an owner of a unit subject to the declaration. As the obligation to file the declaration rested with the sponsor, defendant’s redress may be against the sponsor. However, even if there was such a cause of action, what damages does the defendant have? He actually received the benefit of his bargain. The contract disclosed that the premises would be subject to membership in the homeowners association on the date of closing as required by the NYCRR; that status is what the defendant contracted for and what he received. The status was not affected by the late filing; that status was created by contract. The late filing merely prevented the property from being encumbered for title and notice purposes. In fact, had not the sponsor filed the proper documentation, albeit late, it would be possible that other homeowners would have a cause of action because their proportionate share of the common expenses would be increased if any of the 54 unit owners were excluded.
Defendant has no cause of action for the failure of the sponsor to timely record the declaration.
Conclusion:
Defendant’s motion to dismiss is denied on the merits.
Plaintiffs cross motion to hold that the plaintiff is entitled to money damages because the defendant is a member of plaintiffs homeowners association is granted. The court finds that the defendant is a member of plaintiffs homeowners association. As this may be classified as an equitable determination, the court concludes it has the authority to make such a determination pursuant to CCA 212 as a necessary element to resolve the claim for monies due and owing.

. Phaedrus, Fables, book IVJ fable 2, 5 (circa 8 a.d.).

. Seaview Assn. of Fire Is. v Williams, 69 NY2d 987, 989 (1987).